```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                  HOT SPRINGS DIVISION
```

LARRY GLEGHORN                                           PLAINTIFF

        v.           Civil No. 04-6060

DON MELTON, in his individual capacity;
THOMAS MARS, in his individual capacity;
STEVE DOZIER, in his official capacity as
Director of the Arkansas State Police
Department; JERRY DAVIS, in his capacity
as Chairman of the Arkansas State Police
Commission; and the ARKANSAS STATE POLICE             DEFENDANTS

## MEMORANDUM OPINION

This case is before the Court for consideration of the Defendants' motion for summary judgment and supporting documents (Docs. #39-41), Plaintiff's response and supporting documents (Docs. #44-47) and Defendants' Reply (Doc. #49).

Plaintiff brings this action against Defendants pursuant to 42 U.S.C. §§ 1983 & 1985 alleging violations of his due process and equal protection rights under the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff contends Defendants effectively terminated his employment in violation of his substantive and procedural due process rights, as well as his equal protection rights. Plaintiff also asserts state law claims of intentional infliction of emotional distress, defamation and wrongful discharge. Plaintiff seeks a declaratory judgment, compensatory and punitive damages, and attorney fees and costs. For the reasons stated herein, the Court finds Defendants' Motion for Summary Judgment should be and hereby is GRANTED. Accordingly,

Plaintiff's claims pursuant to 42 U.S.C. §§ 1983 & 1985 and for declaratory relief are DISMISSED WITH PREJUDICE. The remaining causes of action based upon state law are DISMISSED WITHOUT PREJUDICE.

Jurisdiction is proper under the general federal question statute, 28 U.S.C. § 1331. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to hear the claims based upon state law.

**Background**

The facts are related in a light most favorable to the non-moving party, as required. Plaintiff began his employment with the Arkansas State Police (ASP) as a recruit on February 14, 1971. He subsequently completed his training and was certified as a Trooper. In 1997, Plaintiff was laterally transferred from Troop F to Hot Springs, Arkansas as the Commander of Troop K. In his four years as Commander of Troop K, Plaintiff received favorable evaluations.

In July, 1999, Thomas Mars, who was Director of ASP at the time, conducted an investigation of alleged misconduct involving two ASP employees, Lieutenant James Hale and Julie Hefner, resulting in Ms. Hefner's termination. Ms. Hefner filed a harassment suit against the ASP, Plaintiff and Lt. Hale that was concluded by settlement as to all defendants in 2001.

Plaintiff contends on September 14, 2001, he and Lt. Hale were advised via a telephone conference with Colonel Don Melton (then Director), Major Houston Tally and Steve Dozier that they were

"immediately relieved of their command" and would be transferred to the administrative office in Little Rock due to the Hefner lawsuit. According to Plaintiff, Melton told him he had lost confidence in Plaintiff's ability to manage a troop. Plaintiff states he appealed this decision to Frank Gwen, then Chairman of the ASP Commission, and requested a hearing before the full Commission but the request was denied.

After the transfer, Plaintiff retained the same pay and title as Captain. Plaintiff reported to work in Little Rock on September 24, 2001. According to Plaintiff, his job duties were limited to reviewing files for mistakes and filing. Five days later, Plaintiff took sick leave and remained on either sick or annual leave until his leave was exhausted. He then contacted Major J.R. Howard to advise he was ready to return to work. Major Howard consulted Melton who stated that Plaintiff could come back to work but could not tell him what his specific job duties would be. According to Plaintiff, "that [was] not good enough", and he submitted his retirement effective May 21, 2002, just short of his mandatory retirement date of August 1, 2002.

**Summary Judgment Standard**

The Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). In

-3-

reviewing a summary judgment motion, the court must view the facts and inferences from the facts in the light most favorable to the non-moving party, and the burden is placed on the moving party, to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986); *Nat'l. Bank of Commerce of El Dorado, Arkansas v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). Once the moving party has met this burden, the non-moving party may no longer rest on the allegations in its pleadings, but must set forth specific facts by affidavit and other evidence, showing that a genuine issue of material fact exists. *See* FED.R.CIV.P. 56(e). In order to withstand Defendants' motion for summary judgment, Plaintiff must substantiate his allegations with "sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir.1992).

Entry of summary judgment resting on qualified immunity is appropriate if, viewing the record in the light most favorable to the non-moving party and affording him all reasonable inferences, no genuine issue of material fact exists regarding whether the officials' actions, even if unlawful, were objectively reasonable "in light of the legal rules that were 'clearly established' at the

time [the actions were] taken." *Anderson v. Creighton*, 483 U.S. 635 (1987)(internal citation omitted).

## Discussion

### Sovereign Immunity - ASP and official capacity claims

Defendants move the Court to dismiss Plaintiff's claims against the ASP and the official capacity claims against Steve Dozier and Jerry Davis as they are barred by the Eleventh Amendment to the United States Constitution. Plaintiff contends that these defendants are not entitled to sovereign immunity as there are disputed facts at issue in this case.

Sovereign immunity deprives federal courts of jurisdiction over lawsuits brought by private citizens against states unless the state has waived its immunity or Congress has abrogated the state's immunity under a valid exercise of Congressional power. Here, the State of Arkansas has not consented to be sued in the federal courts and Congress did not abrogate the state's sovereign immunity when it enacted 42 U.S.C. § 1983. *See Jacobsen v. Dep't of Transp.*, 450 F.3d 778 (8th Cir. 2006)(citing cases). Thus, sovereign immunity bars Plaintiff's § 1983 and 1985 claims against Steve Dozier, in his official capacity as Director of the Arkansas State Police Department; Jerry Davis, in his capacity as Chairman of the Arkansas State Police Commission; and the Arkansas State Police, as well as Plaintiff's claim for declaratory relief. Accordingly, these Defendants are DISMISSED.

**Qualified Immunity - individual capacity claims**

Qualified immunity protects public officials from personal liability under § 1983 when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982). We first address whether the facts alleged show that the state actor's conduct violated a constitutional right. *See Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004). If that threshold question is answered in the negative, we need not proceed further, as the defendant is entitled to qualified immunity. If a constitutional right may have been violated, we proceed to the second step and determine whether the right was clearly established. *Id*.

Plaintiff contends he was constructively discharged resulting in violations of his substantive and procedural due process rights as well as his right to equal protection of the laws. All of Plaintiff's alleged constitutional violations hinge on whether Separate Defendants Don Melton and Thomas Mars' actions resulted in a constructive discharge. If not, then Plaintiff has failed to show Separate Defendants violated any constitutional right, and Separate Defendants are entitled to qualified immunity against Plaintiff's claims.

Plaintiff was scheduled for mandatory retirement on August 1, 2002. However, in September 2001, Don Melton, former Director of the ASP, transferred Plaintiff to the administrative office in

Little Rock advising Plaintiff there were reports about mismanagement at Troop K that were being investigated.

Plaintiff contends the transfer amounted to an illegal constructive discharge. "Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing him to quit." *Baker v. John Morrell & Co.*, 382 F.3d 816 (8th Cir. 2004). To prove a case of constructive discharge, a plaintiff must show: (1) that a reasonable person in his situation would find the working conditions intolerable and (2) that the employer...intended to force the employee to quit. *Garman v. Gencorp,* Inc., 120 F.3d 127 (8th Cir. 1997). If the plaintiff cannot show the employer consciously intended him to quit, he can still prevail on a constructive discharge claim if the employer could have reasonably foreseen that the employee would quit as a result of its actions. *Fenney v. Dakota, Minnesota & Eastern R.R. Co.*, 327 F.3d 707 (8th Cir. 2003)(*quoting Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011 (8th Cir. 1999).

Plaintiff testified that after the transfer he maintained the same pay and the same title of Captain. (Doc. 41, Ex. 1, p. 1). Plaintiff stated that he was told that the reason for the transfer was that Melton lost "confidence in [his] ability to manage a troop". (Doc. 41, Ex. 1, p. 2). According to Plaintiff he had ten months left before his mandatory retirement date of August 1, 2002. (Doc. 41, Ex. 1, p. 4). Plaintiff took his sick and vacation leave

"due to the advice of [his] doctor", and asked to return to work when it was exhausted two months prior to his retirement date. (Doc. 41, Ex. 1, p. 7). Plaintiff testified that Melton told him to return to work. *Id.* According to Plaintiff he chose to retire at that point because they would not be specific about what his job duties would be and he didn't want to be embarrassed or humiliated by being an assistant file clerk. (P. 8).

Plaintiff contends that the transfer was done "with an intent to force resignation", yet he provides no evidence to support this statement other than his own assessment. (Doc. 45, p. 13). In fact, the only evidence submitted by Plaintiff in support of his summary judgment response is his own affidavit. In the affidavit, Plaintiff avers: (1) he worked for the ASP for 31 years receiving only the highest evaluation marks; (2) he felt he was "stripped of [his] command and given a job as a file clerk"; (3) he was treated for depression and a heart condition due to these events; (4) the transfer was to "punish" him for Tom Mars' negligent handling of a complaint involving other ASP employees. (Doc. 45, Ex. A).

Viewing these allegations in the light most favorable to Plaintiff, the Court cannot conclude that Plaintiff was constructively discharged from his employment. Nothing in the record indicates that the working conditions were intolerable or that Separate Defendants had an intent or reason to believe Plaintiff would quit as a result of being transferred to the administrative office. Further, Melton was within his statutory

authority to transfer employees for the efficient administration of the ASP.  Section 12-8-104(h) of the Arkansas Code provides, in pertinent part:

> Whenever in the Director of the Department of Arkansas State Police's discretion the action is necessary for the efficient operation of the Department..., the Director... may:
>
> (1) Transfer, assign, and reassign from one division to another division any member of the Department... or other employee of the Department....

While Plaintiff was undoubtedly unhappy with the transfer, the Court finds that he voluntarily resigned from his position.  There was no termination, thus no state action resulting in any constitutional violation.  Given the totality of the circumstances surrounding Plaintiff's resignation and the state of the law regarding constructive discharge, we conclude that it was not "apparent" that Separate Defendants' conduct violated a clearly established federal right.  Separate Defendants are entitled to qualified immunity.[1]

## 42 U.S.C. § 1985

Plaintiff's claim that Defendants conspired in violation of 42 U.S.C. § 1985(3) fails for the reasons set forth above, specifically because Plaintiff failed to allege the deprivation of a constitutional right.

---

[1] The Court finds that Plaintiff's allegations fall short of stating a claim against Mars in his individual capacity, but, even so, Mars is entitled to qualified immunity.

**State Law Claims**

Having granted the summary judgment motion on the federal law claims, we decline to retain jurisdiction on the state law claims. 28 U.S.C. § 1367(c)(3).

**Conclusion**

For the reasons stated, Defendants' motion for summary judgment should be and hereby is GRANTED. Accordingly, Plaintiff's claims pursuant to 42 U.S.C. §§ 1983 & 1985 and for declaratory relief are DISMISSED WITH PREJUDICE. The remaining causes of action based upon state law are DISMISSED WITHOUT PREJUDICE. The parties are to bear their own fees and costs.

IT IS SO ORDERED THIS 4th DAY OF MAY 2007.

/s Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge